UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
HECTOR ROSARIO,

                Plaintiff,                          **COMPLAINT**

vs.

                                            **JURY TRIAL DEMANDED**

VILLAGE OF SLEEPY HOLLOW,

                Defendant.
-----------------------------------------------------X

## I. INTRODUCTION

1. Plaintiff, Hector Rosario, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the New York State Human Rights Law, Executive Law § 296 ("NYSHRL"), against Defendant, the Village of Sleepy Hollow, for violation of his rights to be free from race/national origin discrimination and retaliation.

2. After investigating this matter, the Equal Employment Opportunity Commission ("EEOC") determined that Plaintiff was "a victim of national origin discrimination when he was denied certain career advancement training, disparately treated with respect to time and attendance and harassed by fellow officers, all in violation of Title VII of the Civil Rights Act of 1964, as amended." A copy of that Determination is attached hereto as Exhibit 1.

## II. PARTIES

3. The Plaintiff, Hector Rosario, is an Hispanic man of Dominican and Puerto Rican descent. He resides in Westchester County and at all relevant times has worked as a police officer for the Village of Sleepy Hollow Police Department.

4. The Defendant, Village of Sleepy Hollow, is a municipality located in Westchester County and organized pursuant to the laws of the State of New York. It may sue and be sued.

### III.   JURISDICTION & VENUE

5. As plaintiff alleges that Defendant has violated his rights under 42 U.S.C. §§ 2000e et seq., this Court has jurisdiction over the case pursuant to 28 U.S.C. §§ 1331, 1343 (3) and (4), 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1988.

6. As Plaintiff's pendent state law claims arises out of the same nucleus of operative facts as his federal claims, this Court has pendent jurisdiction over them pursuant to 28 U.S.C. § 1367.

7. Plaintiff has timely filed charges of race and national origin discrimination and retaliation with the United States Equal Employment Opportunity Commission (EEOC) and he has received a right to sue notice from the U.S. Department of Justice within the last ninety (90) days. A copy of that Notice is attached hereto as Exhibit 2.

8. As the events giving rise to this action occurred in Westchester, New York, within this judicial district, this Court is the proper venue.

### IV.   FACTUAL AVERMENTS

#### A.   Background and Protected Activity by Plaintiff.

9. Plaintiff has been a full-time police officer with the Village of Sleepy Hollow Police Department ("SHPD") since 2008.

10. Plaintiff is Hispanic, of Dominican and Puerto Rican descent.

11. The SHPD has a long history of treating its Hispanic police officers as second class citizens, dating back at least to the 1990s when it instituted a policy of not allowing Spanish-speaking police officers to speak Spanish in the presence of non-Spanish speaking police officers.

12. In addition to Plaintiff, at least two other SHPD Hispanic officers and one African-American officer have filed complaints of discrimination with the EEOC within the last five years.

13. In 2011, Gregory Camp was promoted to Police Chief.

14. Before his promotion and while he was a ranking officer with the SHPD, Chief Camp used a series of racial slurs during a conversation in which he was covertly tape-recorded. The Village took no action regarding Camp's comments other than to send him to anger management training, and it subsequently promoted him to Chief.

15. In or about May 2016, following Camp's retirement, the Village promoted Anthony Bueti as Police Chief.

16. In February 2012, while Camp was SHPD Police Chief, Plaintiff brought to the administration's attention racist, sexist and violent conduct by three Caucasian SHPD police officers, Gianetti, Muendel and Fiorisi.

17. Officer Gianetti had referred to the SHPD's then only female officer, Wendy Yancey, who is African-American, as a "ghetto bitch" in Facebook correspondence he had with Officer Muendel while he was using a Department computer.

18. In addition, Plaintiff learned that Officers Muendel and Fiorisi had pretended to kill Plaintiff and African-American SHPD officer Paul Nelson while the two were playing video games.

19. After Plaintiff raised concerns about the actions of Gianetti, Muendel and Fiorisi, the SHPD took no meaningful action against them, but instead blamed Plaintiff, Nelson and Yancey for having complained.

### B.   Adverse Treatment of Plaintiff.

20. After he complained about the disturbing behavior of the Caucasian officers referenced above, Plaintiff was subjected to various adverse actions by Defendant, including the following.

21. Plaintiff was denied training opportunities which would likely lead to promotion, including Defensive Tactics, Instructor Development, and Criminal Investigation training, that were given to more junior Caucasian officers.

22. Plaintiff was removed from a special narcotics task force despite his excellent performance, thereby adversely affecting his pay and promotional opportunities, while Defendant did not so remove a junior Caucasian officer who was similarly assigned.

23. Plaintiff was written up for alleged "sick time abuse" while the SHPD did not write up Caucasian officers for the same alleged infraction despite their attendance record being the same as, or worse than, Plaintiff's.

24. Chief Camp gave Plaintiff a negative reference when Plaintiff sought a position with the Westchester County Department of Public Safety. Camp did so because of racial and ethnic bias and retaliatory animus toward Plaintiff.

25. Following Plaintiff's 2014 filing of a Title VII Charge of discrimination and retaliation with the EEOC, the SHPD took additional discriminatory and retaliatory actions toward him, including the following.

26. Defendant has promoted less qualified officers over Plaintiff to the position of Detective.

27. On multiple occasions, Plaintiff was not provided with back-up in situations where back-up should have been provided, thereby endangering his physical safety and welfare.

28. Despite a request from the Westchester County narcotics unit in or about November 2015 that Plaintiff be permitted to work with that unit, Chief Camp blocked him from doing so. That denial both stymied Plaintiff's career and caused him to lose overtime pay.

29. At the same time, Camp permitted SHPD Officers Dougherty and Morrison to work with the Town of Greenburgh drug task force and they both accumulated substantial overtime pay in doing so.

30. As the Village of Sleepy Hollow is in Westchester County, but is not in the Town of Greenburgh, Camp's refusal to allow Plaintiff to work with the Westchester County unit was

4

illogical and was motivated by discriminatory bias and retaliatory animus.

31. In or about August 2014, the Mayor of Sleepy Hollow publicly announced at a televised Village Board meeting that Plaintiff had suffered a heart attack. Not only was this inaccurate, it was an unauthorized breach of Plaintiff's health privacy rights.

32. The Department's attitude toward Plaintiff and other officers who have raised concerns about discrimination is expressed in two flyers that Lt. Gasko has displayed on his official bulletin board: 1) the first shows a picture of a rat with the words, "Think before you speak!!!!!" underneath; 2) the second reads, "I'll be at the Jacobi Maternity ward where there are fewer crying babies and pregnant women than at my command."

33. The EEOC investigated Plaintiff's discrimination and retaliation charges.

34. The EEOC noted that "[c]ompelling witness testimony undermines Respondent's assertion that it did not discriminate against Charging Party . . . Accordingly, Respondent's position does not withstand scrutiny . . . [and] Charging Party was a victim of national origin discrimination when he was denied certain career advancement training, disparately treated with respect to time and attendance and harassed by fellow officers, all in violation of Title VII."

35. The EEOC finds probable cause that discrimination occurred in less than 4% of all charges filed with the EEOC.

36. As a result of Defendant's actions, Plaintiff has lost pay and the possibility of career advancement, and suffered non-pecuniary damages, including emotional distress and humiliation.

### IV. CAUSES OF ACTION

37. Plaintiff incorporates paras. 1-36 as if fully restated herein.

38. By dint of the foregoing, Defendant has discriminated against Plaintiff because of his race and/or national origin and ethnicity in violation of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §§ 2000e et seq.., and the New York State Human Rights Law, NY Executive Law § 296.

39. By dint of the foregoing, Defendant has retaliated against Plaintiff in violation of his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and the New York State Human Rights Law, NY Executive Law § 296.

### V. **PRAYER FOR RELIEF**

40. WHEREFORE, plaintiff prays that this Honorable Court:

(a) empanel a jury to hear and decide this matter;

(b) award to plaintiff compensatory damages, including backpay, front pay, and damages for non-pecuniary injuries;

c) enter affirmative relief in favor of Plaintiff, including injunctive relief to prohibit any further retaliation;

(d) award to plaintiff his reasonable attorneys' fees and costs pursuant to 42 U.S.C. section 1988, and

(e) enter any other relief justified by the law and facts.

Dated: New Paltz, NY
January 18, 2018

Respectfully submitted,

Christopher D. Watkins (CW 2240)
WATKINS LAW
5 Paradies Lane
New Paltz, NY 12561
(845) 294-3991
chris@cdwatkinslaw.com
*Attorney for Plaintiff*